# 98 DTA 161

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ**

JAVIER CASIANO CARBONELL
Demandante-Apelado

v.

STAR KIST CARIBE INC.
Demandada-Apelante

Núm. KLAN-96-01004

San Juan, Puerto Rico, a 2 de abril de 1998

Panel integrado por su Presidente, Juez Rossy García
y los Jueces Martínez Torres y Rodríguez García

Rossy García, Juez Ponente

 

## TEXTO COMPLETO DE LA SENTENCIA

El recurso instado en el caso de epígrafe interesa la revisión y revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Aguadilla (Ramón E. Febus Bernardini, Juez). Mediante ésta dicho foro declaró con lugar una querella por alegado despido injustificado, instada por el apelado, Javier Casiano Carbonell. Condenó así a la aquí apelante a satisfacer a dicho querellante la suma de $6,264.52, correspondiente a un mes de sueldo, más una indemnización progresiva adicional equivalente a una semana por cada año de servicio. Le impuso, además, intereses legales, las costas del proceso, más $500.00 por concepto de honorarios de abogado.

Resolvemos que incidió el foro apelado al así dictaminar, por lo que resulta procedente emitir sentencia revocatoria de la apelada.

### I

El 1ro. de noviembre de 1995 el querellante apelado, Sr. Casiano Carbonell, instó acción solicitando indemnización por su alegado despido injustificado, la que predicó en lo dispuesto en la Ley Núm. 80 de 1976, 29 L.P.R.A. sec. 185a-185i. En la misma alegó, en síntesis, que fue empleado de la querellada Star Kist Caribe, Inc. por aproximadamente diez años; que el 22 de abril de 1994 regresó a su empleo después de haberse ausentado por estar sufriendo de un trastorno emocional; que durante dicho período estuvo bajo tratamiento con el Dr. José Zamora Alvarez, Psiquiatra, a quien fue referido por SINOT; y que el Dr. Zamora le había ordenado que estuviera fuera de sus labores habituales desde el 15 de octubre de 1993 y hasta el 13 de abril de 1994, fecha esta última en que lo autorizó a regresar a su empleo. Expuso, además, que ese día fue asignado a realizar varias tareas, por lo que le reclamó a su supervisor que le permitiera llevar a cabo sus labores acostumbradas como operario de máquinas para empacar, ello como base para alegar que, ante su solicitud, su supervisor lo acusó de estar alterado y faltarle el respeto, siendo luego conducido a las facilidades de enfermería. Alegó finalmente que fue entonces referido para ser evaluado por su psiquiatra, el Dr. Zamora. Según expuesto en la demanda, *"el 29 de abril de 1994 el Dr. Zamora lo evaluó y le entregó el certificado que le había sido requerido en [sic] la Star Kist para concederle una licencia sin sueldo por un año"; que al llevar el certificado a la gerencia le informaron que estaba despedido efectivo el 24 de abril de 1994; y que tal proceder constituia un despido injustificado. A tales efectos alegó "que la artimaña de ofrecerle una licencia sin sueldo si su médico le preparaba un certificado que acreditara su incapacidad no tuvo otro propósito que tratar de justificar el despido".* ■

Emplazada como fue la aquí apelante, presentó en tiempo oportuno su contestación. En la misma aceptó que el querellante solicitó reintegrarse a su empleo luego de acogerse al máximo de licencia y beneficios provistos por la ley que crea el Seguro por Incapacidad No Ocupacional Temporera (S.I.N.O.T.); que estuvo bajo tratamiento médico con el Dr. José Zamora Alvarez; así como que *"el Dr. Zamora certificó que el [querellante] debía estar fuera de su trabajo por una condición emocional desde el 15 de octubre de 1993 hasta el 13 de abril de 1994."* Luego de negar en forma general las restantes alegaciones de la demanda, alegó, en la afirmativa, que al reintegrarse el querellante a sus labores luego de agotar el máximo de beneficios que le proveía S.I.N.O.T., mostró éste *"nerviosismo, agresividad, marcado mal humor y hostilidad",* razón por la cual fue referido inicialmente al médico que presta servicios en el dispensario que mantiene la apelante para sus empleados, siendo luego referido para evaluación por su médico, Dr. Zamora Alvarez, quien certificó que el querellante no se encontraba en condición de continuar trabajando. ■ Alegó así la apelante, en oposición, que medió justa causa para el despido del querellante apelado, toda vez que no se encontraba emocionalmente capacitado para desempeñarse en su trabajo, según los términos de la certificación médica expedida por el Dr. Zamora Alvarez.

Con estos antecedentes, el 8 de febrero de 1996 la aquí apelante presentó una moción en solicitud

de un pronunciamiento de sentencia sumaria a su favor. En apoyo a la misma sometió una declaración jurada del Dr. Zamora Alvarez, ésta a los efectos de establecer que el 25 de abril de 1994 evaluó al apelado, quien se reintegraba a su trabajo luego de disfrutar de una licencia por incapacidad no ocupacional temporera debido a un trastorno emocional, y que lo refirió para ser evaluado por el Dr. Zamora Alvarez a los fines de que éste determinara si el apelado estaba en condición de reintegrarse a su trabajo. Con la referida moción incluyó, además, entre otra prueba documental complementaria, el certificado médico expedido por el Dr. Zamora, a los efectos de establecer que el apelado, según certificado por su propio médico, no se encontraba en condición de salud para reincorporarse a sus labores.

Notificada como fue dicha moción, el demandante apelado sometió otra en oposición, la que también acompañó con declaraciónes juradas, éstas a los fines de establecer la existencia de controversias fundamentales en torno a los hechos materiales. En particular, sometió una declaración jurada suscrita por el Dr. Zamora Alvarez en la que dicho facultativo indicaba que expidió el referido certificado bajo la creencia de que el mismo ayudaría a que su paciente no perdiera su empleo.

En esta etapa de los procedimientos y sin haberse emitido dictamen alguno en torno a la moción de sentencia sumaria antes referida, el foro de instancia señaló el caso para una conferencia con antelación a juicio. Según surge del Informe de Conferencia sometido por las partes, en el mismo consignaron éstos sus respectivas teorías y contenciones, quedando la controversia limitada a la determinación de si medió causa justificada para el despido del apelado. Significativo resulta que en dicho Informe ante la evidente controversia levantada por el querellante apelado en su oposición a la moción de sentencia sumaria, se anunció como testigo del demandante al Dr. Zamora Alvarez. Por su parte, la apelante anunció, entre otros testigos, al Dr. Luispoldo Orama quien, según se indicó, habría de declarar en torno a su intervención en el proceso de evaluación y despido del querellante apelado.

De otra parte, se consignó en el Informe de Conferencia que las partes habían convenido en estipular que el apelado fue empleado de la Star Kist por espacio de diez (10) años, comenzando en junio de 1984, y que fue despedido el 2 de mayo de 1994. Estipularon, además, que el demandante estuvo ausente de su empleo desde el 15 de octubre de 1993 y hasta abril de 1994, por razón de estar sufriendo un trastorno emocional. Asimismo acordaron que durante dicho período estuvo bajo tratamiento con el Dr. José Zamora Alvarez, Psiquiatra, ante quien fue referido por la agencia que administra el beneficio creado por S.I.N.O.T., Ley Núm. 139 de 26 de junio de 1968. según enmendada, 11 L.P.R.A sec. 201 *et. seq.* ▪ Finalmente, en ocasión de la conferencia con antelación a juicio, el foro de instancia denegó la moción de sentencia sumaria promovida por la apelante y señaló la vista en su fondo para el 5 de agosto de 1996.

Definida como quedó la controversia según indicado, se procedió a la vista en su fondo en la fecha asignada. En lo pertinente, de los extremos estipulados y la prueba testifical aportada, ésta según consignada en la transcripción que fue sometida por las partes con el alcance de una exposición estipulada, la que fue así admitida por este Foro, surge que el 22 de abril de 1994 el querellante apelado se personó a la Star Kist y solicitó ser nuevamente repuesto en su empleo, *"porque supuestamente [se] encontraba bien de salud"* y el Dr. Zamora lo había dado de alta para trabajar. ▪ A ello accedió la aquí apelante, asignándolo a trabajar en su área acostumbrada los días 22, 23 y 24 de abril del referido año.

Según el testimonio del apelado, el día 24 de abril su supervisor le ordenó en dos ocasiones llevar a cabo diferentes tareas, lo que dio base a que se suscitara un incidente cuando éste le preguntó al supervisor la razón por la cual le estaba moviendo a realizar otras labores. Según atestado por éste, el supervisor lo llevó a la oficina donde indicó que aquél estaba nervioso, alterado y que lo había ofendido. Ante lo expuesto por el supervisor, fue referido al dispensario médico que opera la Star Kist en sus facilidades para ser evaluado para el Dr. Luispoldo Orama, médico consultor que atiende los casos de emergencia que surjan en la compañía. ▪ Según testimonio del apelado, el Dr. Orama le dijo que lo notaba alterado y nervioso, procediendo entonces a informarle *"que iba a hablar con [su] médico (Dr. Zamora Alvarez) porque entendía que no estaba en condición de trabajar"*. Fue así referido para una evaluación médica, la que fue concertada en dicha ocasión mediante comunicación telefónica. ▪

Por su parte, el Dr. Luispoldo Orama declaró que es consultor médico ocupacional en la Star Kist, atendiendo los casos de emergencia que puedan surgir en la compañía, y canalizando otros a los diferentes médicos y especialistas de la comunidad, así como a diferentes agencias, incluyendo el Fondo del Seguro y S.I.N.O.T. A tales efectos indicó que opera un dispensario en las facilidades de la Star Kist, donde hay enfermeras en los tres turnos de trabajo, quienes cuentan con su supervisión y asesoramiento *"física y telefónicamente"* las 24 horas. Indicó el Dr. Orama, además, que no interviene con el otorgamiento de las licencias, limitándose a evaluar al empleado y remitir luego su informe al Departamento de Recursos Humanos de la compañía para la acción que éste determine apropiada. ■

En lo que respecta a su intervención con el demandante apelado indicó que lo había evaluado en varias ocasiones por accidentes del trabajo y, por último, por una condición de trastorno emocional. Atestó que en la última ocasión el querellante le fue referido por la Oficina de Recursos Humanos para que lo evaluara con relación a un incidente en el área de trabajo *"de aspecto emocional"*. ■ Indicó que luego de evaluarlo llamó telefónicamente a la oficina del Dr. Zamora para concertarle una cita, ello toda vez que era éste el psiquiatra que lo venía tratando, para que fuera él quien determinara si el querellante apelado podía continuar trabajando. A tales efectos indicó que en esa ocasión habló con la secretaria del Dr. Zamora. ■ Finalmente, evaluado como fue el querellante apelado por su médico psiquiatra como resultado de dicho referido, el Dr. Zamora expidió un certificado indicando que el querellante sufría de trastornos emocionales severos al momento de la evaluación, así como que no vislumbraba cuándo iba a estar en condiciones de trabajar, especificando que el período de incapacidad no iba a ser menor de un año. Con tal certificación, el Dr. Orama hizo una nota al efecto en el expediente del querellante y le notificó a la Oficina de Recursos Humanos el resultado de dicha evaluación. ■

Pertinente resulta, además, que en turno de contrainterrogatorio, a preguntas de la representación legal del querellante, declaró el Dr. Orama como sigue:

*"Okay. --"En o alrededor del 25... de abril 25 del 94, evalué la condición del señor Javier Casiano, empleado que retorna de una licencia por una incapacidad no ocupacional temporera debido a un trastorno emocional. Por la condición de exaltación, nerviosismo e intranquilidad que refiere este empleado, entendí que no se encontraba en condición de reintegrarse a su trabajo y consulté el caso con el doctor José J. Zamora Alvarez, quien le [sic] brindado tratamiento siquiátrico al señor Casiano en el pasado.*

*P. Hasta ahí, ya es suficiente, doctor. Entonces yo quiero que usted le explique al Tribunal cuál de las dos cosas son verdad. Usted le ha dicho a Vuestro Honor aquí en sala que usted no habló con el doctor Zamora, que usted habló con su secretaria. Pero en una declaración jurada que usted firma y que somete su abogado, usted dice todo lo contrario. ¿Cuál de las dos versiones son correcta?*

*R. Son correctas.*

*P. Entonces, ¿en qué quedamos?*

*R. Pues fácil, yo llamé, hice una cita con la secretaria y la secretaria lo vio. Después de eso, cuando él me manda el certificado, hablo con el doctor Zamora y él me explica lo que está pasando.*

*P. Habló con el doctor Zamora.*

*R. Después, sí. Y entendió lo que yo le expliqué, ¿verdad?"* ■

De otra parte, a preguntas de la representación legal de la parte apelante relacionadas con la determinación de referirlo a una evaluación médica, el querellante apelado declaró en turno de contra-interrogatorio, como sigue:

*"R. No, a todo el que intervino conmigo no porque en ningún momento ellos intervinieron conmigo. Cuando a mí me llevaron, el señor Guillermo, a la oficina, ellos se reunieron conmigo en la oficina y me dijeron a mí:*

225

--"Javier, ¿qué pasó? y

--"Simplemente pasó esto y esto", nada más.

"Yo quiero ir a Personal a hablar con Personal, pero ellos me dijeron a mí que en ningún momento yo podía hablar con Personal porque ellos eran los jefes allí." De ahí ellos me sacaron y me llevaron a Enfermería, que llevarme a Personal que era donde yo quería ir.

P. Oiga, y el doctor suyo, el doctor suyo, el doctor Zamora, ¿lo llegó a ver a usted en su consultorio?

R. Ese mismo día no.

P. No, no, no le estoy preguntando si ese mismo día, don Javier. Yo le estoy preguntando si el doctor Zamora, su siquiatra, el que lo tuvo seis meses fuera de su trabajo por una... un trastorno emocional, lo evaluó a usted después del incidente de ese día.

R. Sí, me evaluó por petición del doctor de la compañía.

P. Por lo que sea, ¿lo evaluó a usted?

R. Sí.

P. ¿ Y esa evaluación, duró cuánto tiempo?

R. No se decirle.

P. Y ese doctor suyo, lo que.. el resultado de la evaluación suya, ¿dónde lo puso, lo puso en algún sitio el resultado de su evaluación cuando lo examinó a usted?

LCDO. MARI PESQUERA:

Vuestro Honor, objeción, (INCOMPRENSIBLE). El doctor Zamora tiene una declaración jurada admitida en evidencia. Me parece que es irrazonable preguntarle a este testigo dónde el doctor apuntó algo. Ya está aquí la posición del doctor Zamora establecida ante el Tribunal.

LCDO. LOPEZ LOPEZ:

Su Señoría...

HON. JUEZ:

¿Sometido? ¿Sometido?

LCDO. LOPEZ:

Sometido.

HON. JUEZ:

Adelante.

LCDO. LOPEZ:

P. Don Javier, cuando a usted el doctor Zamora le certificó períodos de incapacidad bajo SINOT, ¿cómo era que se extendían esos períodos? ¿El doctor Zamora le daba a usted un certificado que decía que usted iba a estar fuera de una fecha a una fecha?

TESTIGO: (SR. CASIANO)

R. No.

P. ¿Y qué era lo que él hacía?

R. Bueno, pues él ponía, sí, de una fecha a otra fecha, pero que en esa fecha yo iba a las citas médicas, si me encontraban bien de salud, pues entonces me daba de alta. Pero si no, me extendía un poquito más la fecha.

P. Y el doctor era el que hacía esa determinación, si usted estaba capacitado para regresar a trabajar o no, la hacía el doctor.

R. Sí, el doctor.

P. El doctor. Claro, usted iba para que el doctor determinara si ya usted estaba bien de su trastorno emocional?

LCDO. MARI PESQUERA:

¿Cuál de los doctores?

TESTIGO: (SR. CASIANO)

Mi doctor, el doctor Zamora.

LCDO. LOPEZ:

Y eso mismo sucedió, don Javier, cuando usted fue la última vez a evaluación con el doctor Zamora. Usted fue para que él evaluara si usted estaba en condiciones de retornar a su trabajo. Mire a ver si eso es así, igual que pasó en las ocasiones anteriores.

R. Sí, es así.

P. Claro. Y él hizo una determinación, sobre si usted estaba en condiciones de regresar o no. ¿Eso es así, don Javier, verdad que eso es así?

R. Si, eso fue cuando me... cuando el me dio de alta a mí, yo estaba en condiciones de trabajar.

P. Y lo que sea que él hizo, se lo informó a la compañía.

R. Sí, se lo informó a la compañía.

LCDO. LOPEZ:

Esas serían mis preguntas.

HON. JUEZ:

¿Re-directo?

LCDO. MARI PESQUERA:

No tenemos nada más.

HON. JUEZ:

¿Alguna otra prueba de la parte demandante?
LCDO. MARI PESQUERA:

*Ninguna otra, Vuestro Honor."* ▪

Finalmente declaró la Sra. Rosemarie Rodríguez Rivera, Gerente de Relaciones con el Empleado en la Star Kist por los últimos tres (3) años y quien había trabajado durante 18 años precisamente en el área de recursos humanos con diferentes corporaciones, entre otras, la Hilton International y la Bristol Myers Squibb, además del Gobierno de Puerto Rico dirigiendo fondos federales. En lo pertinente al caso que nos ocupa y refiriéndose al expediente del querellante apelado, declaró como sigue:

*"P. Y en el día de hoy, ¿tiene usted el expediente de ese empleado?*

*R. Sí, aquí está presente.*

*P. Déjeme hacerle la siguiente pregunta, conforme a lo que... el documento que surge de ese expediente, el señor Javier Casiano, ¿qué tipo de licencia, si alguna, disfrutó mientras fue empleado de la compañía Star Kist Caribe? Entre las licencias que proveen las normas de la compañía o la ley del Estado Libre Asociado·de Puerto Rico, la legislación federal, ¿qué tipo de licencia disfrutó este empleado?*

*R. Básicamente previo a ese momento él estuvo disfrutando de el [sic] beneficio de la Ley de Incapacidad No Ocupacional.*

*P. ¿Y alguna otra licencia que haya disfrutado en adición a la llamada licencia de SINOT, por ejemplo, Fondo del Seguro del Estado?*

*R. Estuvo acogido algún tiempo bajo el Fondo del Seguro del Estado.*

*P. ¿Cuál es la norma, qué procedimiento se sigue en la Star Kist Caribe cuando un empleado está disfrutando de una licencia y va a reintegrarse a su trabajo, qué es lo que...*

*R. Usual...*

*P....qué es lo que sucede, quién interviene y qué es lo que sucede?*

*R. Okay. Cuando un empleado de la com... de nuestra compañía está bajo una licencia, al regreso tiene que personarse al Departamento de Enfermería y de nuestro médico para revisión de que el expediente esté claro y preciso y ellos autorizan su regreso al trabajo.*

*P. ¿Por qué regresa el empleado al médico o al dispensario y no regresa directamente, digamos, al supervisor?*

*R. No, ellos regresan directamente al dispensario, es una política interna de nuestro Departamento de Seguridad a los efectos de que el médico de la compañía corrobore y el Departamento de Enfermería corrobore que todos los expedientes estén al día, todos los certificados y que el empleado está apto para trabajar en la compañía.*

*P. Cuando se le...*

*HON. JUEZ:*

*Perdone, ¿qué dijo, que el empleado esté apto para trabajar en la compañía?*

*TESTIGO: (SRA. RODRIGUEZ)*

*Sí, apto para trabajar. Que está capacitado. Básicamente él chequea que...*

*HON. JUEZ:*

*Pero usted dijo apto.*

*TESTIGO: (SRA. RODRIGUEZ)*
  *Okay, sí.*

*LCDO. LOPEZ:*

*P. Cuando un empleado va a someterse, o sea, va a acogerse --que es la palabra correcta-cuando un empleado va a acogerse a una licencia, bien por una condición ocupacional o por una condición no ocupacional, ¿quién es el que certifica si este empleado está cualificado para acogerse a esa licencia que padece la enfermedad no ocupacional o que tiene una enfermedad ocupacional? ¿Quién en esas diferentes licencias es el que certifica eso?*

*TESTIGO: (SRA. RODRIGUEZ)*

*R. Básicamente aquí usted está hablando de dos licencias. Primeramente la del Fondo del Seguro del Estado, como nosotros tenemos un dispensario certificado por el gobierno por el Fondo del Seguro del Estado, la corporación, pues, ellos primeramente van a evaluación con nuestro médico y el Departamento de Enfermería. Luego éstos los refieren al Fondo del Seguro del Estado y el Fondo del Seguro del Estado determina si están o no tienen derecho a los beneficios del Fondo del Seguro del Estado.*

*P. Y en el caso de la licencia, que se conoce como licencia no ocupacional temporera bajo la Ley 139, ¿quién es el que hace la determinación de si ese empleado sufre o no una condición que lo cualifique para acogerse a la licencia?*

*R. Su médico de cabecera o el médico que el empleado determine.*

*P. En el caso del señor Javier Casiano, ¿quién era el médico que atendía al señor Casiano por los... en los períodos que estuvo reportado a SINOT?*

*R. Doctor Zamora Alvarez.*

*P. Cuando se hace necesario verificar u obtener información médica con relación a un empleado, ¿quién dentro de la compañía Star Kist se comunica con el médico de ese empleado?*

*R. El mé...*

*P. En el Departamento de Recursos Humanos, ¿quién lo hace?*

*R. El médico de nuestra compañía.*

*P. Cuando usted me dice "el médico de la compañía", ¿qué relación tiene ese médico con la Star Kist Caribe? Un empleado nuestro, ¿qué relación...*

*R. No, esto es un médico consultor que está contratado básicamente en servicios profesionales, pertenece, como yo le dije al comienzo, que es uno de los gerentes es Gerente de Seguridad, pues, el Departamento de Enfermería pertenece al Departamento de Seguridad. Ese médico, pues, es el que corrobora todo porque como hay una cuestión médico-legal que nosotros no intervenimos, inclusive, no tocamos para efectos de todo el expediente médico. Si nosotros necesitamos alguna información, vamos donde ese médico contratado por la compañía.*

*LCDO. LOPEZ LOPEZ:*

*Su Senoría, vamos a solicitarle al Tribunal que tome conocimiento judicial de las disposiciones de la ley que crea la licencia médico-familiar, y de la ley federal conocida como "American Disability Act", que impone la obligación al pa... la limitación al patrono que no puede comunicarse directamente con los facultativos que atienden a sus empleados fuera de la relación de trabajo y que*

*toda información médica se tiene que obtener a través de médicos consultores o médicos...*

*.......*

*P. En el caso del empleado Javier Casiano, ¿le podría decir al Honorable Tribunal cuál fue la intervención que usted tuvo con relación al caso de este señor Javier Casiano?*

*TESTIGO: (SRA. RODRIGUEZ)*

*R. Básicamente el día 2 de mayo el señor Javier Casiano visita el Departamento de Enfermería y me llama la señora Irma Goyco, que es la coordinadora de los servicios de Enfermería, de las enfermeras y el doctor Luispoldo Orama. Ellos me llaman porque el señor Javier Casiano se encontraba en el área de Enfermería con un certificado médico que le mostraba a él que iba a estar fuera de la compañía, posiblemente un año.*

*P. Antes de que usted prosiga, déjeme preguntarle, ¿por qué es que la llaman a usted, por qué Enfermería la llama a usted?*

*R. Bueno, porque el ca... él visita la planta en horas de la mañana y como yo estaba de turno, de gerente, en horas de la mañana durante el primer turno, pues, obviamente me llaman a mí.*

*P. Previo a ese momento, ¿usted había intervenido de alguna forma en el caso específico del señor Javier Casiano?*

*R. En ningún momento, en ningún momento.*

*P. ¿Por qué el señor Javier Casiano una vez llega con un certificado médico tiene que pasar por Recursos Humanos y no se va directamente a trabajar o a algún otro sitio?*

*R. Pues, viene con el certificado médico porque al ellos encontrar el caso de que iba, ya no podía acogerse a continuar bajo los beneficios de la Ley 139, de Seguro de Incapacidad No Ocupacional, pues, ellos me llaman a mí para que yo intervenga con qué otro tipo de licencia o qué otro tipo de ayuda se le puede ofrecer al empleado. Que ahí es cuando yo intervengo y entonces, pues, el Departa... siempre se comunica con el área de Compensación y Beneficios para también, pues, ayudarle a él.*

*En ese momento yo me siento a dialogar, en presencia de la enfermera Irma Goyco, el doctor Luispoldo Orama, pues, entonces encuentro la situación, busco los... copia de los certificados de SINOT y el doctor me dice que están ya extendidos a los seis meses y tanto Irma Goyco como el doctor Orama..*

*P. Cuando usted me dice "extendidas a los seis meses", ¿cuál es ese período de seis meses que él había extendido?*

*R. El estuvo, él estuvo fuera desde octubre 15 hasta abril 13, hasta abril 12.*

*P. ¿De qué año?*

*R. Del mis... [sic] octubre 15 del '93 hasta abril 13 del 1994.*

*P. Y después de ese período, ¿tenía qué período en ley para reintegrarse a su trabajo?*

*R. Quince días, luego de terminado el... lo... que le dan de alta bajo SINOT.*

*P. Al momento en que este señor, Javier Casiano, fue referido a su atención, ¿cuánto le restaba del período máximo de seis meses que podía acogerse a la licencia...*

*R. No le queda..*

*P....bajo la Ley 139?*

*R. No le quedaba nada porque exactamente le faltaban dos días, para efectos de todo.*
*P. ¿Y qué información tenía el certificado médico que él le presenta, que la lleva a usted a.*

*R. Bueno...*

*P....a intervenir?*

*R. Básicamente, como le dije, el doctor Orama me informa que el certificado médico le estaba diciendo que él tenía que estar fuera para continuar en tratamiento y que necesitaba un tiempo indefinido y que especificaba que posiblemente era un año.*

*P. Okay. ¿Qué otras alternativas o qué otras licencias se exploraron en el caso del señor Javier Casiano?*

*R. Bueno, en vista de que yo, pues, no estoy facultada para cuestionar un certificado médico, pues, entonces yo empecé... busqué otras posibles ayudas que se pudiera ofrecer al empleado y pensamos primeramente en el "family (INCOMPRENSIBLE)" que nosotros tenemos, que eso, pues, le otorga un permiso al empleado de estar 12 semanas fuera de la compañía sin sueldo, sin que se afecte su empleo en la empresa. Pero, ¿qué pasa?, básicamente no cualificaba porque previo a solicitar tenía que tener 1,250 horas de ese momento en el año anterior, desde el momento en radicar la solicitud.*

*P. ¿Mil doscientos cincuenta (1,250) horas de qué?*

*R. Trabajadas, horas trabajadas. Obviamente, al tener seis meses fuera de la compañía, pues, no las tenía. También pensamos en el... Star Kist Caribe le ofrece a los empleados un beneficio de retiro previo, por incapacidad, antes de tener la edad. ¿Qué pasa?, pero el requisito mayor de este tipo de beneficio requería estar por lo menos quin... con quince años de servicio. El señor Casiano nada más tenía 10 años de servicio.*

*También le estuve hablando a él de porqué no se acogía a... tampoco había oportunidad, como la condición era por cuestiones personales, era no ocupacional, obviamente no podía ir al Fondo. Entonces también yo le orienté que porqué no visitaba, como iba a estar en una condición por un tiempo a lo mejor definido, indefinido, que porqué no visitaba la oficina del Seguro Social, a los efectos de que se orientara si él podía acogerse a algún tipo de beneficio en ese tiempo, que le ayudase.*

*P. ¿Cómo varió su intervención con relación a la persona del señor Javier Casiano, con la intervención de los otros 4,500 empleados que tenemos... que tiene la Star Kist Caribe, cuando va a suscitarse una situación como ésta?*

*R. Es la misma orientación que se le da a todos y cada uno de los empleados".* **[13]**

La Sra. Rodríguez Rivera testificó para concluir, lo siguiente: **[14]**

*"POR EL LCDO. LUIS A. LOPEZ LOPEZ:*

*P. Doña Rose, ¿qué fue... cuál fue el pedido del señor Javier Casiano cuando retornó... Perdone, ¿qué era lo que este empleado le solicité [sic] a la compañía que hiciera, qué era lo que él quería que se hiciera?*

*TESTIGO: (SRA. RODRIGUEZ)*

*R. El acogerse a algún tipo de beneficio durante el tiempo que el doctor determinaba que él iba a estar imposibilitado para volver a trabajar.*

*P. Y en apoyo a este pedido, ¿qué, si algo, le trajo a usted?*

R. Un certificado médico.

LCDO. LOPEZ LOPEZ:

Su Señoría, si pudiera tener el Exhibit número uno de la parte querellante. Que el récord refleje que le estoy mostrando, que ha sido previamente marcado, el Exhibit número Dos al compañero. Permiso para mostrárselo a la testigo.

P. Doña Rose, este documento ha sido previamente admitido como el Exhibit número Dos de la parque [sic] querellada. Le pregunto, ¿éste es el certificado médico que trajo el señor Javier Casiano en apoyo a su solicitud de una nueva licencia?

TESTIGO: (SRA. RODRIGUEZ)

R. Esto es así, este es el certificado.

P. ¿Qué, si algo, dice ese certificado sobre acomodo razonable?

R. Ninguno, porque claramente dice "luego de dos días de trabajo y a partir del 25 de abril él no ha podido desempeñarse" y que este paciente por orden médica, específicamente del doctor Zamora, pues, no puede estar... tiene que estar fuera de su trabajo por un tiempo que no se puede determinar en este momento que él firmó el certificado, que entre paréntesis él escribió "posiblemente un año."

P. Si un médido que trata a un empleado en particular certifica que este empleado está incapacitado para trabajar, ¿qué acomodo razonable puede realizar la empresa para que él retorne a su trabajo?

R. Pues, es que no hay acomodo razonable porque se está diciendo obviamente que no puede estar desempeñando ninguna función y que tiene que estar fuera de su trabajo.

Por último, significativo resulta que el querellante apelado no trajo a testificar al Dr. Zamora, sometiendo, en sustitución de su testimonio, una declaración jurada por él prestada. Fue su contención en ocasión de la vista que tal declaración jurada había sido estipulada en ocasión de la conferencia con antelación a juicio, por lo que entendía "que estaba excusado por el Tribunal de traerlo". ■■■ Ello suscitó un incidente en ese momento, toda vez que fue la contención de la representación legal de la parte querellada-apelante que lo que se estipuló "fue la autenticidad de la declaración" y que "[Star Kist] no ha estipulado nunca el contenido de la declaración". ■■

A tales efectos, quedó consignada la posición del Lcdo. López López, como sigue: ■■

"LCDO. LOPEZ LOPEZ:

Lo que yo quiero hacer claro para el registro es que la abstención de lo que el compañero relaciona como estipulación no es el contenido de esta declaración. Esta declaración según la minuta fue admitida como parte de la prueba documental de la parte querellante. Ese testimonio mi cliente no lo ha estipulado como el testimonio que vertiría el doctor Zamora. Eso es prueba que está estipulada la autenticidad y que presenta el compañero. Yo quiero tener esto bien claro en el registro, Su Señoría, porque como lo manifestó el compañero, da la impresión de que yo... mi cliente estipuló que era veraz lo que dice..."

Por su parte, el Lcdo. Mari Pesquera, representante legal del querellante, se expresó como sigue: ■■

"LCDO. MARI PESQUERA:

Bueno, eso no es cierto, yo me allano a lo que el compañero plantea. Lo único que la parte demandada ha estipulado es que este documento es una declaración jurada del doctor Zamora. Si es

*verdad o no, es problema discrecional de este Tribunal determinarlo de acuerdo a las evidencias que se le presenten. Así que no hay ningún problema, Vuestro Honor."*

Con tales expresiones quedó dicho extremo sometido a la consideración del tribunal, quien procedió luego, una vez sometido el caso por las partes, a emitir la sentencia que es objeto de impugnación mediante el recurso que nos ocupa. En ésta determinó, como cuestión de hecho, que:

*"No es cierto la alegación de la parte demandada de que el demandante haya demostrado un alto grado de nerviosismo, mal humor y agresividad al realizar las funciones normales de su empleo. No es cierto que haya sido a petición suya que le asignaron tareas más sencillas."*

*Fue precisamente por la degradación en sus tareas y porque fue sustituido en su puesto por un empleado con menos antiguedad, que se sintió indignado y reclamo de su supervisor, que se le permitiera ejercer sus acostumbradas labores.*

*El demandante pidió audiencia ante el Gerente de Personal pero le fue denegada. En cambio se le condujo a la enfermería donde el médico le aconsejó que se tomara una licencia sin sueldo por un año ya que aparentemente su trastorno emocional no estaba superado.*

*El Doctor de la compañía llamó al Dr. Zamora, psiquiatra, le relató el alegado problema que habían tenido con su paciente Javier Casiano, le informó que lo suspenderían y le pidió que lo evaluara, para que certificara que su paciente aún no estaba en condiciones de trabajar de manera que le extendieran su licencia sin sueldo y no perdiera su empleo.*

*El Dr. Zamora se opuso a la suspensión y le explicó el [sic] doctor de la compañía que consideraba que la condición emocional de Javier Casiano en nada le impedía ejercer sus labores y que con un acomodo razonable por parte del patrono no habría problemas en que Javier Casiano continuara trabajando.*

*El Dr. Zamora accedió a entregarle el Certificado porque el Doctor de la Compañía le dijo que con el Certificado se le extendería una licencia sin sueldo por un año al término del cual podría el paciente regresar a su empleo.*

*Cuando fue a llevar su Certificado a la Gerente de Personal ésta le informó que estaba despedido.*

*Todos los sucesos ocurridos al regreso de su empleo constituyen un despido por incapacidad mental el que resulta ser injustificado".* ▆▆

Habiendo así determinado concluyó como cuestión de derecho que la aquí apelante dejó de demostrar *"mediante preponderancia de prueba que hubo una causa justa para el despido".* ▆▆

Notificada como fue la aquí apelante de dicho dictamen e inconforme con el mismo interpuso el recurso que nos ocupa en el que imputa en síntesis que incidió el foro de instancia *"al determinar que el despido del demandante apelado se llevó a cabo sin que mediara justa causa según dicho término se define en la Ley Núm. 80 de 30 de mayo de 1976".* Imputa además que incidió *"al basar su Sentencia en una Declaración Jurada cuyo contenido era claramente inadmisible por constituir prueba de referencia particularmente cuando el contenido de la misma estaba reñido con una certificación médica emitida por el propio médico declarante bajo su firma y licencia médica",* así como que la decisión alcanzada *"no representa el balance más justiciero y racional de la prueba desfilada".*

Encontrándonos en condición de dictaminar luego de un ponderado análisis de los escritos presentados y, en particular, de la transcripción de la regrabación sometida por las partes con el alcance de una exposición estipulada, resolvemos que incidió el foro de instancia al emitir el dictamen que es ahora objeto de impugnación, por lo que resulta procedente emitir sentencia revocatoria de la apelada.

## II

La Ley de Indemnización por Despido Injustificado, Ley Núm. 80, *supra,* dispone que cuando un

patrono despide a un empleado contratado por tiempo indeterminado sin que haya mediado justa causa para el despido, el patrono viene obligado a pagarle a dicho empleado, además del sueldo devengado, una indemnización equivalente a un mes de trabajo, más una cantidad adicional equivalente a una semana por cada año de servicio. No obstante, en aquellos casos en que haya mediado justa causa, el patrono quedará relevado de dicha obligación. Ahora bien, la propia Ley Núm. 80, *supra*, dispone que en esta última instancia el peso de la prueba recae sobre el patrono. 29 L.P.R.A. sec. 185k. Esto significa que en toda reclamación presentada al amparo de dicha ley, existe una presunción de que el despido fue injustificado, la cual le corresponde rebatir al patrono. Para ello el patrono tiene que probar, mediante la preponderancia de la prueba, que medió causa justificada para el despido y que éste respondió a una razón relacionada con la ordenada marcha y normal funcionamiento del negocio y no a una actuación caprichosa del patrono. *Delgado Zayas v. Hosp. de Medicina Avanzada,* ___ D.P.R. ___ (1994), **94 J.T.S. 149**, a la pág. 500; *Secretario del Trabajo v. I.T.T.,* 108 D.P.R. 536, 543 (1979). Basta con señalar que en nuestra jurisdicción no existe una prohibición absoluta al despido de un trabajador. Por ello, de mediar justa causa, puede ser despedido sin derecho a remedio alguno.

Dirigiendo nuestra atención a la situación particular del caso que nos ocupa, surge de los autos que la controversia a ser dilucidada por el foro de instancia quedó reducida a la determinación de si medió causa justificada para el despido del demandante apelado. En particular, habiéndose estipulado por las partes, previo a la vista, que el demandante había prestado servicios para la apelante por un término de diez (10) años, comenzando en el mes de junio de 1984; que estuvo ausente desde el 15 de octubre de 1993 y hasta abril de 1994, por estar sufriendo un trastorno emocional; que durante ese tiempo el demandante estuvo bajo tratamiento con el Dr. Zamora Alvarez, psiquiatra, siendo referido por S.I.N.O.T.; que fue reinstalado en su empleo por recomendación de dicho facultativo, por entender que estaba en condición física y mental para desempeñarse en su trabajo; así como que fue despedido el 2 de mayo de 1994, se limitó la controversia a la determinación de si el demandante apelado se encontraba en condición física y mental para reintegrarse a las funciones de su empleo.

Definida como quedó la controversia, procedió la demandada apelante a descargar la afirmativa de prueba que le correspondía para establecer la justificación del despido y, en particular, la realidad de que el demandante no estaba mentalmente capacitado para trabajar. Un examen objetivo y desapasionado de la prueba aportada por las partes nos obliga a concluir que la apelante descargó el peso de prueba que le correspondía. Evidentemente no se trata de un proceder arbitrario y caprichoso por parte de la demandada apelante. Tampoco existe base para inferir intención aviesa por parte del patrono para privar al demandante de su empleo. De un análisis de la totalidad del récord y, en particular, del testimonio del apelado y lo estipulado por las partes en ocasión de la conferencia con antelación a juicio, se desprende que éste agotó sus beneficios bajo la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et. seq.*, ello luego de reportarse al Fondo del Seguro del Estado como resultado de un accidente laboral. Posteriormente, en o alrededor del 15 de octubre de 1993 solicitó y le fueron concedidos los beneficios del Seguro por Incapacidad no Ocupacional Temporera. Se acogió así a los beneficios de tal licencia por el período comprendido entre dicha fecha y el 13 de abril de 1994, ello por estar sufriendo un trastorno emocional no relacionado con su trabajo. Durante dicho período fue referido por S.I.N.O.T. al Dr. Zamora Alvarez, psiquiatra, quien le brindó asistencia y tratamiento médico, y quien certificó su incapacidad para trabajar durante dicho período por razón de su condición emocional.

Es en estas circunstancias, y luego de agotar los beneficios a los que tenía derecho bajo S.I.N.O.T., que el 22 de abril de 1994 el apelado solicitó ser reinstalado en su empleo, a lo que accedió la apelante. Fue asignado al área de trabajo donde se desempeñaba previo a reportarse a S.I.N.O.T. Al tercer día de estar laborando se suscitó un incidente con su supervisor, lo que dio base y motivó que fuera referido a la Oficina de Relaciones con el Empleado. Según declarado por el propio querellante apelado, al ser conducido a dicha oficina, su supervisor informó que estaba nervioso, alterado y que lo había ofendido. ██ Significativo resulta, además, lo declarado por el demandante apelado, para colocar en correcta perspectiva el referido que se le hizo para ser evaluado por el Dr. Zamora Alvarez. Basta con señalar que su testimonio fue a los efectos de que estuvo bajo tratamiento y supervisión médica por su condición emocional durante los seis meses inmediatamente anteriores al incidente y que era el Dr. Zamora quien, en ocasión de cada cita, determinaba si estaba capacitado para trabajar.

Declaró así, en forma clara y sin ambages, que cuando fue referido al Dr. Zamora para evaluación, *"fue para que él evaluara si estaba en condiciones de retornar a su trabajo"*. ██ De otra parte, es realidad incontrovertida que en las ocasiones anteriores en que el demandante se reportó a su empleo luego de agotar beneficios, tanto bajo la Ley de Compensación por Accidentes del Trabajo, *supra*, como bajo S.I.N.O.T., la apelante le permitió reintegrarse a su trabajo. ██

Lo antes expuesto claramente explica y justifica la acción del Dr. Orama, médico especializado en medicina ocupacional, quien presta servicios en el dispensario que mantiene la apelante, quien determinó que la condición emocional del demandante justificaba una evaluación por parte del Dr. Zamora Alvarez sobre la capacidad y condición emocional del demandante para reintegrarse al trabajo. Evaluado como fue el querellante por el Dr. Zamora, certificó dicho galeno que *"este paciente por orden médica debe estar fuera de su trabajo por un tiempo que no se puede determinar en estos momentos (posiblemente un año)"*.

Con dicho certificado, recibido en ese momento de conformidad por el apelado, se personó éste a la empresa apelante, siendo referido a la Oficina de Relaciones con el Empleado. Fue allá atendido por la Sra. Rosemary Rodríguez, Gerente de Relaciones, a quien le entregó el referido certificado. Analizada como fue su situación, recibió entonces orientación a los efectos de que había agotado el máximo del período de licencia por incapacidad no ocupacional temporera (S.I.N.O.T.). Se le indicó, además, que como su condición emocional, según certificado por el Dr. Zamora, no estaba relacionada con el empleo, no podía reportarse su caso al Fondo del Seguro del Estado. Tampoco cualificaba, por las razones que fueron indicadas en ocasión de la vista por la Sra. Rodríguez, para ningún otro beneficio provisto por la apelante para sus empleados. La realidad antes expuesta, y la representación hecha por el demandante a los efectos de que se encontraba mental y emocionalmente incapacitado para desempeñar las funciones del puesto que ocupaba, apoyado en el certificado médico expedido por el Dr. Zamora, fue lo que condujo a la apelante a dar por terminado el empleo del demandante. Ello a luces constituye causa justificada para la terminación del empleo del demandante apelado.

En cuanto a este particular ninguna duda debe existir en cuanto a que la incapacidad física o mental de un empleado para realizar funciones esenciales de su trabajo constituye causa justificada para la terminación de su empleo ello en ausencia de legislación social especial que sea aplicable y que constituya impedimento para tal proceder; situación que no está presente en el caso que nos ocupa. Así ha sido reconocido expresamente por el Tribunal Supremo en *Torres González v. Star Kist Caribe Inc.*, ___ D.P.R. ___ (1994), **94 J.T.S. 5** a la pág. 11455 donde en forma clara y sin ambages expresó que *"[u]no de los principios establecidos en materia de despidos es su justificación cuando un empleado está incapacitado física y mentalmente para realizar las funciones o para asistir regularmente a su empleo por las razones que sean"*. ██

Es frente a la realidad antes expuesta y descansando el foro de instancia en una declaración jurada suscrita por el Dr. Zamora conflictiva por demás con lo por él certificado en cuanto a la incapacidad del demandante apelado y cuya admisibilidad con el alcance evidenciario pretendido por el demandante fue oportuna y correctamente objetada que dicho foro desmereció toda la prueba que fue aportada por la apelante incluyendo las declaraciónes de los testigos que testificaron en el proceso para concluir según ya indicado *"que todos los sucesos ocurridos al regreso a su empleo constituyen un despido por incapacidad mental el que resulta ser injustificado"*. ██

Tal conclusión alcanzada por el tribunal apelado hace menester reconocer de entrada la norma general que dicta que un foro apelativo no intervendrá con la apreciación de la prueba hecha por el tribunal de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto, salvo que de un análisis integral del récord así se requiera *Pueblo v. Cabán Torres,* 117 D.P.R. 645 (1986). Ahora bien, el arbitrio del juzgador de hechos es respetable más no es absoluto. Como bien se ha resuelto una apreciación errónea de la prueba por parte del foro de instancia no tiene credenciales de inmunidad frente a la función revisora de un foro apelativo. *Ramos Acosta v. Caparra Dairy, Inc.*, 113 D.P.R. 357 365 (1982). Tal es la situación particular en el caso que nos ocupa donde un análisis integral del expediente y un examen sereno desapasionado y minucioso de la prueba que fue aportada por las partes ante el foro de instancia no nos permite avalar dicho dictamen por no representar el balance más racional, justiciero y jurídico de la totalidad de la evidencia que desfiló ante dicho

tribunal.

En primer lugar y según ya indicado es realidad indisputada por haberlo así estipulado las partes que el demandante estuvo mentalmente incapacitado durante los seis (6) meses anteriores a que se decretara la terminación de su empleo según certificado por el Dr. Zamora. Además la única evidencia médica que tuvo el tribunal de instancia ante su consideración atinente a la condición mental del demandante al momento de decretarse la terminación del empleo lo fue precisamente el certificado médico expedido por el propio Dr. Zamora el que fue sometido por el apelante casualmente para establecer tal incapacidad. Tal realidad y efecto probatorio, tratándose de un certificado expedido por un facultativo médico para fines y propósitos tan serios y delicados como es la determinación de si una persona está mentalmente capacitada para desempeñar las funciones de su cargo no puede ser tan livianamente desmerecido con la mera presentación de una declaración jurada prestada por el propio médico que expidió la certificación en la que expone extremos que resultan conflictivos con lo por él certificado. Ante esta realidad y habiéndose impugnado el contenido de tal declaración jurada tanto antes como durante la vista correspondía al demandante apelado producir en ocasión de la vista al Dr. Zamora. Tal incongruencia entre lo por él certificado y lo expuesto posteriormente en una declaración jurada no podía ser dirimida por el foro de instancia en ausencia de su testimonio personal.

Resolvemos ahora a la luz de lo antes expuesto que el patrono apelante descargó el peso de prueba que le correspondía para establecer mediante preponderancia de prueba la causa justificada para decretar la terminación del empleo del apelado. En primer lugar por admisión propia del apelado y la prueba que aportó la apelante quedó establecida la condición emocional del apelado la que le impidió desempeñarse en su empleo durante los seis meses inmediatamente anteriores a decretarse la terminación de su empleo. Acreditó también la apelante la reinstalación del apelante a su unidad de trabajo a petición de éste, tal como lo había hecho anteriormente, una vez éste informó que estaba en condición de reintegrarse a las funciones de su puesto. De otra parte la apelante aportó prueba sobre la ocurrencia del incidente inmediatamente luego de ser reintegrado el apelado a su unidad de empleo, lo que claramente justificó su referido para ser evaluado médicamente. Quedó establecido, además, mediante certificación del Dr. Zamora Alvarez, quien evaluó al apelante a raíz del referido incidente, que éste, *"por orden médica debe estar fuera de su trabajo por un tiempo que no puede determinar en estos momentos"*. Frente a tal certificación, producida por el propio apelado, ninguna discreción tenía el patrono apelante para permitirle continuar desempeñándose en su empleo, sin exponerse a incurrir en responsabilidad por cualquier menoscabo adicional a su salud o daño que por su condición pudiera ocasionarle a terceras personas. De otra parte, tal determinación responde a la necesidad de asegurar la ordenada marcha y normal funcionamiento del negocio. Tal prueba, y su efecto probatorio, no puede ser totalmente desmerecida por una declaración jurada suscrita por el propio médico que certificó la incapacidad mental del apelado y quien no fue presentado por el demandante apelado en ocasión de la vista. En consecuencia, la conclusión y determinación alcanzada por el foro de instancia no puede prevalecer.

Además, al admitir la declaración jurada prestada por el Dr. Zamora con el alcance evidenciario pretendido por el apelado, sobre la oportuna y correcta objeción de la representación legal de la apelante en ocasión de la vista en su fondo, erró el foro de instancia por constituir la declaración jurada prueba de referencia, inadmisible para probar la verdad de lo en ella aseverado. Reglas 60(c) y 61 de Evidencia, 32 L.P.R.A. Ap. IV; *P.N.P. v. Rodríguez Estrada, Pres. C.E.E.,* 123 D.P.R. 1, 34-35 (1988). Basta con señalar que tal regla de exclusión forma parte del debido proceso de ley procesal que tiene cualquier parte en un procedimiento judicial. *P.N.P. v. Rodríguez Estrada, Pres. C.E.E., supra,* pág. 35.

### III

Por los fundamentos antes expuestos se dicta sentencia revocatoria de la apelada y se ordena y dispone la desestimación de la demanda instada por el demandante apelado en el caso de epígrafe.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 98 DTA 161**

1. Véase Demanda, Apéndice del Recurso, págs. 61-62.

**2.** Véase Contestación a la Demanda, Apéndice del recurso. págs. 53-59.

**3.** Véase Informe de Conferencia Entre Abogados, Apéndice del Recurso, págs. 11-18.

**4.** Véase testimonio del Sr. Casiano Carbonell, Transcripción de Regrabación, continuación de vista efectuada el 6 de agosto de 1996, a la pág. 6.

**5.** *Id.*, a las págs. 7 y 8.

**6.** *Id.*, a las págs. 8 y 9.

**7.** Véase Transcripción de la vista efectuada el 5 de agosto de 1996, a las págs. 15 y 16.

**8.** *Id.*, a la pág. 17.

**9.** *Id.*, a las págs. 17 y 18.

**10.** *Id.*, a las págs. 21-26.

**11.** *Id.*, a las págs. 39-40.

**12.** Véase Transcripción de la vista efectuada el 6 de agosto de 1996, págs,.25 a 28.

**13.** *Id.*, a las págs. 33 a 42.

**14.** *Id.*, a las págs. 71-72.

**15.** Véase Transcripción de la regrabación de lo acontecido en ocasión de la vista en su fondo del día 5 de agosto de 1996, a las págs. 2-3.

**16.** *Id.*, a la pág. 33.

**17.** *Id.*, a la pág. 34.

**18.** *Id.*

**19.** Véase Sentencia, Apéndice del Recurso, págs. 2-3.

**20.** *Id.*, a la pág. 4.

**21.** Véase transcripción de vista efectuada el 6 de agosto de 1996, a la pág. 7.

**22.** *Id.*, a la pág. 13.

**23.** *Id.*, a la pág. 8.

**24.** Véase, además, Verdiales Morales y Santiago Meléndez, Reserva de empleo al obrero incapacitado por accidente laboral: requisitos bajo el Artículo 5A de la Ley de Compensaciones por Accidentes del Trabajo, 61 Rev. Jur. U.P.R. 59 (1992).

**25.** Véase Sentencia. Apéndice del Recurso, a la pág. 3.